# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL THOMAS** | **CIVIL ACTION** |
| **versus** | **NO. 11-1587** |
| **SHERIFF MARLIN GUSMAN** | **SECTION: "F" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Darrell Thomas, is a state prisoner incarcerated at the Ascension Parish Prison, Donaldsonville, Louisiana. On March 9, 2009, he was convicted of possession of cocaine under Louisiana law.[1] On March 16, 2009, he was sentenced to a term of five years imprisonment.[2] On November 16, 2009, he was found to be a third offender and was resentenced as such to a term

---

[1] State Rec., Vol. I of IV, minute entry dated March 9, 2009.

[2] State Rec., Vol. II of IV, transcript of March 16, 2009; State Rec., Vol. I of IV, minute entry dated March 16, 2009.

of five years imprisonment.³ On January 26, 2011, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction, vacated his sentence, and remanded the matter for further proceedings.⁴ The Louisiana Supreme Court then denied petitioner's related writ application on September 16, 2011.⁵

In the interim, on April 21, 2011, the trial court had resentenced petitioner to a term of five years imprisonment.⁶ On June 17, 2011, he was then again found to be a multiple offender and was resentenced as such to a term of five years imprisonment.⁷

On June 30, 2011, petitioner filed the instant federal application for *habeas corpus* relief.⁸ On October 3, 2011, the state filed a response to that federal application.⁹ On or about May 31, 2012, petitioner filed an objection to the state's response.¹⁰ On June 6, 2012, upon the retirement

---

³ State Rec., Vol. II of IV, transcript of November 16, 2009, pp. 25-26; State Rec., Vol. II of IV, minute entry dated November 16, 2009.

⁴ State v. Thomas, No. 2009-KA-1578, 2011 La. App. Unpub. LEXIS 283 (La. App. 4th Cir. Jan. 26, 2011); State Rec., Vol. I of IV.

⁵ State v. Thomas, 69 So.3d 1142 (La. 2011) (No. 2011-KO-0374); State Rec., Vol. III of IV.

⁶ State Rec., Vol. I of IV, minute entry dated April 21, 2011.

⁷ State Rec., Vol. I of IV, minute entry dated June 17, 2011.

⁸ Rec. Doc. 2.

⁹ Rec. Doc. 8.

¹⁰ Rec. Doc. 11.

of United States Magistrate Judge Louis Moore, this matter was transferred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation.[11]

In its response, the state concedes that petitioner's federal application was timely filed but argues that he failed to exhaust his remedies in the state courts. Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in the state courts before seeking federal *habeas corpus* relief. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

Accordingly, to determine whether petitioner's federal claims are exhausted, this Court would be required to compare those claims to the ones he presented to the Louisiana Supreme Court. Such an analysis is made virtually impossible here by the fact that petitioner's *pro se* writ application filed with the Louisiana Supreme Court was largely unintelligible.[12] However, this Court can pretermit a decision on the exhaustion issue, because a federal court has the authority to deny *habeas* claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002,

---

[11] Rec. Doc. 10.

[12] A copy of that writ application is included in Volume III of the state court record.

at *8 n.8 (E.D. La. May 13, 2008). Because petitioner's claims have no merit, it is recommended that they simply be dismissed on that basis.

## I. Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> In April 2008, New Orleans Police Officer Gabriel Favaroth received information from a confidential informant he had known for approximately one year. The informant told him that an individual known as "Tee" would be at the corner of Cleveland Street and South Claiborne Avenue, wearing a white T-shirt, blue jeans and brown shoes. "Tee" was described by the informant as a slender black male, 5'7" to 6 feet tall, with a low haircut. Officer Favaroth, driving a civilian Ford Explorer and wearing plainclothes, drove to the location and set up surveillance from his vehicle. Some fifteen to twenty minutes later, Officer Favaroth observed the individual as described by the informant, engage in what the officer believed was a drug transaction. Officer Favaroth estimated that when he observed the drug transaction, his distance from the Defendant was approximately the distance from the witness stand in the courtroom to the center of the courtroom. He observed a white female clad in all dark clothing approach Defendant. The two conversed for several moments, and the female handed Defendant an unknown amount of currency. Defendant accepted the money with his right hand. He looked around, removed several objects from his mouth, and he handed them to the female. Defendant placed the currency he received from the female into his right pants pocket. When asked whether he could tell the type of object Defendant gave to the female, Officer Favaroth said he believed "it was white objects. It's consistent with being crack cocaine."
>
> Officer Favaroth then called a take-down unit, manned by Officers Powell and Ellis. He observed the officers make contact with Defendant and observed Defendant struggle with Officer Ellis, who subdued him. He believed Officer Ellis ordered Defendant to spit out the contraband he had in his mouth. Officer Favaroth observed Officer Ellis recover the contraband. Officer Ellis relinquished the contraband to Officer Favaroth at the police station. Officer Favaroth identified the evidence he deposited in the police

property and evidence room: four pieces of plastic, each containing one rock of crack cocaine; forty-eight dollars in U.S. currency in various denominations; and a cell phone.

Officer Favaroth was confronted on cross examination with his testimony from a prior hearing, when he was asked where Defendant was holding the money he received from the white female during the alleged drug transaction. Officer Favaroth had testified at the prior hearing that he could not recall. He could not recall giving that answer and, as he stated that he recalled Defendant placing the money in his right pants pocket. After Defendant's arrest by Officers Ellis and Powell, Officer Favaroth met them at the police station, where Officer Ellis handed him four pieces of clear plastic containing white rock-like substances believed to be cocaine. Officer Favaroth admitted he did not place the evidence into the police property and evidence room until approximately three hours and forty-five minutes after it was given to him by Officer Ellis. New Orleans Police Department Criminalist Officer John Palm, Jr. testified that he tested four rock-like substances under item number D-27055 of 2008, and they all were positive for cocaine.

New Orleans Police Officer Nicole Powell and her partner Officer David Ellis arrested Defendant, after being notified by Officer Favaroth of the alleged narcotics sale. Officer Ellis struggled with Defendant to effectuate Defendant's arrest. Officer Powell testified that she heard Officer Ellis order Defendant to spit out whatever he had in his mouth, and she heard Defendant spit it out. She said Officer Ellis retrieved four individual rock-like substances off the ground that Defendant spit out of his mouth. After they left the scene of the arrest they went directly to the police station and they did not stop anywhere enroute. Officer Powell did not know what Officer Ellis did with the objects he retrieved before they arrived at the police station.

Former New Orleans Police Officer David Ellis testified that Officer Favaroth notified him and Officer Powell that Defendant had narcotics in his mouth and that he was at the corner of Cleveland Street and South Claiborne Avenue. Officer Favaroth described Defendant and said he was sitting next to a cement pillar. Officers Ellis and Powell were in a marked police unit. As they approached Defendant after exiting their vehicle, Defendant began chewing, leading Officer Ellis to believe he was attempting to destroy or get rid of narcotics in his mouth. Officer Ellis grabbed Defendant and ordered him to spit out whatever was in his mouth. Defendant spit out four individually-wrapped rocks. Defendant also was in

possession of some cash and a cell phone. Officers Ellis and Powell transported Defendant to the police station without stopping anywhere. Officer Ellis gave Officer Favaroth the contraband.

Ellis testified that he was terminated from the police department August 1, 2008, as the result of an incident that occurred at the end of July 2008. He said he had a lawsuit pending seeking to be reinstated, and that the incident had nothing to do with the arrest of Defendant in April 2008. Ellis admitted that one of the reasons he was terminated from the police department was untruthfulness.

Former Officer David Ellis admitted on direct examination, after being recalled as witness by the Defendant, that he was subpoenaed to testify by defense counsel, and that was why he was in court.

Amy Gisleson, a staff investigator for the Orleans Parish Public Defender's Office, took photographs of the crime scene on February 26, 2009, at approximately 10:00 a.m. She identified the photographs. Gisleson testified that she also measured some distances from two concrete support pillars at the corner of South Claiborne and Cleveland Avenue to a fence near where Officer Favaroth was positioned as he observed the alleged drug sale by Defendant, who was near one of the pillars at the time of the alleged drug sale. Gisleson stated that the distance was forty-one feet, six inches from one pillar and thirty-five feet, six inches from the other.

Officer Favaroth was recalled as a witness and questioned about the photographs taken by Amy Gisleson, relative to where he was positioned during his surveillance of Defendant making the alleged drug sale. He indicated that the photographs did not accurately represent the scene that day, and that he would have to go to the scene to show exactly where he was positioned and what he could see from that position.[13]

## II. Petitioner's Claims

In his federal application, petitioner's claims are not artfully stated. However, he alleges that he was originally arrested on a drug distribution charge which was dismissed. He claims that his rights were then violated when that same incident was later used as the basis to prosecute

---

[13] State v. Thomas, No. 2009-KA-1578, 2011 La. App. Unpub. LEXIS 283, at *3-9 (La. App. 4th Cir. Jan. 26, 2011); State Rec., Vol. I of IV.

him on the charge of which he now stands convicted. He further claims that there was no probable cause for the instant charge of possession of cocaine, in that the original charge was for distribution rather than possession.

The record indicates that petitioner was in fact charged in a prior proceeding, but the state voluntarily dismissed that charge.[14] That fact, however, does not render his subsequent prosecution based on the same incident unconstitutional. While the Double Jeopardy Clause prohibits successive prosecutions for the same crime, that constitutional provision is triggered only if jeopardy attached in the prior proceeding. See, e.g., United States v. Pitts, 569 F.2d 343, 346-47 (5th Cir. 1978). Petitioner has not alleged, much less established, that jeopardy attached in the prior proceeding, and so he has not shown that the instant prosecution was improper.

The Court also notes that, in the instant prosecution, petitioner was originally charged with possession with intent to distribute cocaine but, on February 27, 2009, Assistant District Attorney Francesca A. Bridges amended the bill of information to change the charge to simple possession.[15] To the extent that petitioner is claiming that the amendment serves as a basis for federal relief, that contention is likewise meritless. Such amendments are allowed by state law, see, e.g., State v. Ignot, 701 So.2d 1001, 1013 (La. App. 2d Cir. 1997), and cannot serve as a basis for federal *habeas corpus* relief, see, e.g., Frazier v. Warden of Louisiana State Penitentiary, Civ. Action

---

[14] See State Rec., Vol. II of IV, transcript of August 19, 2008, p. 2.

[15] State Rec., Vol. II of IV, minute entry February 27, 2009; State Rec., Vol. I of IV, bill of information.

No. 06-cv-0312, 2008 U.S. Dist. LEXIS 86580, at *5 (W.D. La. July 10, 2008), adopted, 2008 U.S. Dist. LEXIS 65177 (W.D. La. Aug. 25, 2008).

As to petitioner's contention that there was no probable cause for his arrest, that claim fares no better for several reasons. First, even if probable cause had not existed, a conviction is not invalid simply because there was insufficient probable cause for the arrest. See Gerstein v. Pugh, 420 U.S. 103, 119 (1975) (noting "the established rule that illegal arrest or detention does not void a subsequent conviction"). Second, it is clear that in this case probable cause did exist, namely Officer Favaroth's personal observations and the cocaine petitioner had in his mouth at the time of his arrest. Third, in any event, a claim that petitioner's arrest was not supported by probable cause and that the evidence resulting from that arrest was therefore illegal is not cognizable in this federal *habeas corpus* proceeding. In Stone v. Powell, 428 U.S. 465, 494 (1976), the United States Supreme Court held that a *habeas* petitioner cannot be granted relief based on a Fourth Amendment claim if the state provides "an opportunity for full and fair litigation" of such claims. See also Black v. Warden, Civ. Action No. 05-cv-2187, 2009 U.S. Dist. LEXIS 41827, at *15-17 (W.D. La. Mar. 12, 2009), adopted, 2009 U.S. Dist. LEXIS 130920 (W.D. La. May 18, 2009). Interpreting Stone, the United States Fifth Circuit Court of Appeals has clearly held:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the *processes* whereby a defendant *can* obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim *whether or not the defendant employs those processes*.

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added). Petitioner neither alleges nor demonstrates that Louisiana fails to provide such processes or routinely or systematically

precludes litigation of claims such as the ones he now raises, and it is beyond cavil that Louisiana courts in fact provide criminal defendants the opportunity to raise Fourth Amendment claims. Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Darrell Thomas be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[16]

New Orleans, Louisiana, this twenty-first day of June, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.